And final case of the still morning, Skanska USA Civil Southeast, Inc. and Skanska USA, Inc. v. Bagelheads, Flowers by Yoko et al., numbers 21-13850 and 22-10203. Looks like, well, we certainly have saved the longest case for last. I know we have four folks who are going to be arguing here today. Mr. Watson, you are going to get started. You have, you are saving five minutes for rebuttal. You may proceed. Thank you, Your Honor. May it please the Court. This is an appeal from a judgment in twenty-eight consolidated limitation of liability cases arising out of the breakaway of barges in Birmingham, South, in September, in Pensacola Bay in September 2020. The District Court erred in three separate ways. First, the District Court erred in not granting Skanska exoneration with respect to what I would call the economic loss claims. Second, by denying Skanska discovery with regard to how the U.S. Navy had evaluated weather forecasts. And third, by imposing spoliation sanctions. Are you not addressing here today the issue of the economic loss claims? Yes, indeed. Okay. Yes, that would be my first point. Okay. So, can I, before you get started on that, can, let me just sort of tell you what I understand a limitation act proceeding, which is, in fact, a limited proceeding where the Court is going to determine the negligence involved and whether there's any exoneration. And the Court certainly did that. You question the findings, but on the economic loss piece, I know you're, you have alleged the Court should have addressed those economic loss claims in that limited act, limitation act proceeding. And there are cases where courts have addressed those economic loss claims. Is there a case that indicates the Court is required to do so to address the economic loss claims in this limitation act proceeding? Yes, Your Honor. You say that the Court determines negligence. What the Court has to first determine is liability. And, of course, negligence is a, there are four requirements for liability for negligence. You have to have a duty, you have to have breach of duty, you have to have causation and damages. Now, the issue of causation and damages was severed because that was unique to each individual claimant. When you say has to decide liability, I think the cases reflect that that is generally how the process goes. But even in Byswinger, our Court specifically says generally in a limitation act case, this proceeds in this manner. But doesn't it make sense to do it a different way here? It does not, Your Honor. The, the, there are only two, two exceptions to the rule that the Court, the Federal District Court in a limitation case has to decide the issue of liability and has to decide that issue first before proceeding to the issue of limitation of liability. The only exceptions are the Lake Tankers v. Hinn where the Supreme Court said if the total sum of the claims in the limitation proceeding is less than the limitation fund, there's, the claimants are entitled to proceed in a form of their choice. And you certainly don't have that exception. We do not have that. All, all of this seems a premise on the idea that this is all a preparation for the concorsus in which this limited amount of money would be split. But if there is going to be no such proceeding, then why in the world should a Federal Court decide liability for all these parties? And why doesn't, why isn't that just in dramatic tension with the saving de suitors? Well, because the Supreme Court has said so. And the Supreme Court and every court that has addressed the issue has always said that the, the, the Court must decide the issue of liability without a jury unless one of the two exceptions is met. Well, I, I told you where one of our cases said that generally how that's happened. Do you think, tell me, tell me which Supreme Court case that defies? Well, I'm going to go back to, if you're with me, let's see. Hartford Accident and Indemnity v. Southern Pacific Company said that the Court must first  Can you read me the line that says must? Pardon? Can you read me the line that says must? Yes, I'm trying to read. Actually, I'll give you a quote from Providence and New York Steamship Company v. Hill Manufacturing. The question to be settled by the statutory proceedings being first, whether the ship or its owners are liable at all. And secondly, if liable, whether the owners are entitled to limitation of liability must necessarily be decided by the district court having jurisdiction of the case. But I don't think that detracts from anything that we're, we're questioning here, that the, and our, our precedent in Beiswanger makes this clear, that the limit, a limitation act proceeding is meant to marshal assets in the event, in the event that there's going to be a limitation fund. There is no limitation fund, according to the district court in this case. The limitation act is not designed to prevent a multitude of cases. And what I'm trying to get at is, I know you've raised the Robbins defense to economic losses, but Skanska is free to raise the Robbins defense as now the actions will proceed separately. Well, but that assumes that the, that the, that the claimants have a savings to suitors right to get to state court in the first place. And the court, the, the, the courts have consistently held that there are only two exceptions. There are only two ways, once a limitation case has been filed, there are, the, the district court, the federal district court must decide the issue of liability before ever reaching the issue of limitation. And there are only two exceptions to that rule. One is the, the sufficient fund, and then there's Beiswanger, which was a case where there was a stipulation. The, the, the Fifth Circuit, there's language in the Fifth Circuit case, bear with me a second. Don't you think the logistical problem that existed in this case didn't exist in all those cases you've been citing? Excuse me, Your Honor. There's something like what, 1,050 potential claimants? Yes. And I'm, my question that I'm asking you is, in these other cases where you're saying the economic problem should have been solved, don't you think that there was a logistical problem, maybe that the judge was trying to resolve by doing the way he did it and worry about that issue, about how much money these potential 1,050 claimants might be entitled to after he decided the limitation of liability issue? Well, but, but, but, Your Honor, the fact of the matter is Skanska was entitled to exoneration and a permanent injunction. Skanska was, was entitled to have a, to have a trial on liability in Federal court. And what does the saving to suitors provision mean, if that's true? Because no matter, no matter how preposterous a maritime vessels limitation claim was, it could bring that claim and then be locked into a Federal liability decision. Well, I mean, the courts have always said there is a tension between the, the savings to suitors clause and the limitation. Right, but this would obliterate it. This is not tension. This is making it meaningless. No, Your Honor, it's not. I mean. Why not? Well, that tension has been resolved by the courts. The tension is resolved by saying that the, there are, there are exceptions to the rule. The general rule is the Federal court must decide the issue of liability. That's the rule. And then there are two exceptions. There is the lake tankers versus hens sufficient fund exception. And there is the, the stipulation exception that was recognized by this court in Botswana. But the purpose of all those cases was that the limitation was going to apply. So there was going to be, say, a limit of $1 million in damages. And so in order to give the saving, the suitors their choice of forum, if they agree that they will not together seek more than $1 million, then they can go to state court. But where there is no limit, what's even the purpose of deciding those issues in Federal court? Your Honor, I don't understand what you mean by no limit. Here there was a limitation fund, separate limitation funds for each of these barges. So suppose you lose on every issue you have raised on appeal and the only one that we're arguing about now, this is my hypothetical, is whether the economic loss cases should also have been addressed. Does that change anything? I'm not sure. Pretend we rule against you on every other issue and the only one that we've just told you, you lose on two, three, and four. So the only thing we want to talk about right now is whether the court was required to rule on the economic loss. Plaintiffs, does that change your response to any of this? No, because the court was required to rule on the issue of liability. The court denied exoneration in a case where my client was entitled to exoneration. But I guess that's what we're trying to get at is you have a savings to suitors provision. We have a limitation act case and we're saying you lose on everything else, again, hypothetically. What requires the district court to have kept those economic loss plaintiffs and made that decision? Saying there's no limitation, there's no limitation fund. I'm stopping this proceeding and sending it. Now everybody can proceed individually. Well, first of all, the court should never have reached the issue of limitation. The law is very clear that the court has to reach the issue of liability. But you're not contesting knowledge and privity here, right? No, we certainly were contesting it in the district court. Right, but since you're not appealing it here, that decision is final for purposes of this case, right? Yes, that's correct. Which means you don't have a limitation, right? No, but that does not obviate the requirement that the district court should have dealt with the issue of duty. So where there is no limitation, where there is no limitation, your argument is that the district court, even so, should have carried out the proceeding designed to figure out the relative portions of the later limited amount that the various claimants would have. Well, Your Honor, that's not the only purpose of the limitation. What's the other purpose? It's to have concurses and to not have a multitude of cases in the case. But with no limitation, there won't be a concurses, will there? That's a pretty important question. When the limitation action is filed, there is a concurses. Anyone who wants to make a claim arising out of that particular voyage is obligated to make a claim in the limitation proceeding and in the limitation proceeding. The next step is for the federal district court to determine liability. And, of course, in liability in the case of the economic loss claims, and in that liability phase of the limitation trial, the claimants have the burden of proving that the ship owner is liable. And, of course, that means that they have to prove duty, breach of duty. In this case, the court reasonably severed the issue of causation and damages. So, Byswinger Enterprises says, the damaged claimants bear the initial burden of establishing liability, and the ship owner then bears the burden of establishing the lack of privity or knowledge. If the vessel owner is found liable but limitation is granted, the admiralty court distributes the limitation fund among the damaged claimants in an equitable proceeding known as a concurses. There is no concurses if there's not a limitation, right? No, that's not right. The concurses is formed at the beginning of the lawsuit. The concurses is formed when the vessel owner files the limitation proceeding and requires all of the claimants to come into that proceeding. All the claimants are in that proceeding. Those claimants have to prove liability. If they prove liability, then the court turns to the issue of limitation of liability. But the concurses is going to exist until the court determines liability. The purpose of limitation proceedings is not to prevent a multiplicity of suits, but in an equitable fashion to provide a marshalling of assets, the distribution pro rata among claimants, none of whom can be paid in full. But if there's no limit, then there's no need for that pro rata distribution. But the court has to decide liability first. The courts are very, very clear that this court has said, the court says it in Bisinger, that the court must decide the issue of liability first. It didn't say that. It said generally that's how these cases proceed. I can read you that one, too, if you'd like. Well, Your Honor, there is only one case in the history, there is only one case in the reported case at any rate in the history of the Limitation Act where a district court denied limitation to a party who was entitled to exoneration. And that's the H84 case, the case in the Second Circuit. In that case, the district court found that the shipowner was not negligent but found the shipowner had privity or knowledge and dismissed the limitation proceeding and dissolved the injunction. The Second Circuit said this was manifest error, that having found that the shipowner was not negligent, which was the only issue in that case, in other words, having found that the shipowner was not liable, it was error to ever reach the issue of limitation. Well, that's not this case at all. Well, yes, Your Honor, it is. This is a case where the issue of limitation, the issue of liability, was squarely presented by motion. It seems like the limitation issue was pretty easy, easy enough at least that you haven't even appealed that. And so why should the court have literally a thousand trials and then get to the end and say, oh, well, there's no limitation? Well, of course, the counter to that, Your Honor, is that the court, on the issue of the liability to the economic loss claimants, this would be one motion as opposed to a thousand motions in some other court. And it was in violation of Rule 5. How can you truly know if there's liability in each of these cases until you do a full proceeding? I understand there's one important legal issue that all of them share, but there will be different facts, there will be different questions. But the issue was presented at the beginning. None of the economic loss claimants pled the facts necessary for Skanska to have had a duty. Then it should be easy for you to win in state court. Under the law, we're not required to go to state court because there was an insufficient fund and no one stipulated. And the law is very clear that in the absence of one of those two. What if the plaintiffs stipulated that they would not seek funds greater than what the district court has said would be allowed, which is, you know, infinite. But what if they stipulated that in state court? If we're going to be formalistic about it, wouldn't that be enough? No. It's too late for that. Would it have been enough? I mean, you're saying there are two exceptions if they had stipulated. The 900-and-something economic loss claimants had entered into a stipulation. It would have had to have been like a by-swinger stipulation with that many claimants that gave priority to certain claimants. It certainly would have been impossible. And it wasn't done. Bear with me a second, Your Honor. But in by-swinger, the Limitation Act proceeding had not yet occurred, correct? So they were saying, we understand you still have that right to a Limitation Act proceeding, whereas here it has. Is that a material difference? There was a limit, right, in by-swinger? Well, in by-swinger, the parties enter into a stipulation that protected the owner's right to limit. There was no such stipulation in this case. Right, but if there is no limit, then how can you protect the owner's right to a limit? But it was improper to even reach the issue of limitation with respect to the economic loss claimants, but without determining liability. I suspect we have your argument on that. We may be going in circles at this point. Is there anything else you'd like to make sure we hear about? Again, I will say, it was also improper under Rule 12i. Rule 12i says that the court must determine a 12b6 motion before trial unless it's deferred until trial. But didn't it defer until it reached the damages and then it necessarily has been denied because it's not reaching the allocation of funds because there is no limit, right? Well, you have to decide a 12b6 motion before you can find a party liable. You can't deny exoneration to a party that is entitled to exoneration and just not rule on a 12b6 motion. Didn't the district court, though, defer ruling on it until reaching the allocation of the funds if, in fact, there had been a limitation? But that assumes that it's an issue of damages, and it's not an issue of damages. But the rules provide that a district court can defer until trial. And so the court is saying, well, in case we have to have a trial on damages, I'm now deferring the ruling until then. Why was that not proper? Well, it's not proper because this was a trial on liability. The court said it was going to decide the issue of liability, and you can't decide liability without deciding whether there's a duty. What about spoliation? Spoliation, what more do you think would have been necessary to support the district court's finding? The district court's findings? The district court's sanction. To sanctions? The spoliation question. Oh, okay. There would have to have been some evidence of an affirmative act. Was it an affirmative act? Who has to take the affirmative act? Because, for instance, someone wiped the devices. Now, there hasn't been an allegation that that particular person in the IT office or whatever knew what was going on, but isn't that an affirmative act? No. What the claimants argue and what the magistrate judge said was a list of things that Skanska did not do. Skanska did not enable automatic backups. Skanska did not require its employees to backup cell phone data. Skanska did not forbid employees from deleting text messages. It did not have a system for recovery of text messages. But inherent in that list of things that Skanska did not do is also what Skanska did, which was when employees would turn in a phone when they were leaving the company, the phones were wiped. This is not a situation where we have one cell phone that died and was irretrievable. These were people that Skanska had said, okay, we're going to let you take discovery from these people that were involved in all these decisions. And there were a number of phones that were wiped. How is that not deliberate? Well, it was probably negligent. I mean, the person who did it. But it was an affirmative act. It was not just what Skanska did not do. It was what Skanska did. Well, but it was not done to it. It has to be an affirmative act with the intent to destroy evidence. And there's no evidence that there was anything done to destroy evidence. I mean, it was a negligent act by someone who had received the litigation hold but had forgotten about it. Let's say in a different case, not yours. I'm not asking you to concede anything about your case. But let's say in a different case, there is a litigation hold on the CEO's text messages. And the CEO says to the CIO, hey, buddy, there's a litigation. Just FYI, there's a litigation hold on these text messages. I'm going to turn in my phone and get a new one. And the CIO says, okay, great. And hands over the phone without telling anyone in the IT department not to do the usual wipe. Would that be spoliation? Well, that's a very different case. Sure. We're not talking about the CEO. I get it. We're talking about a lower level employee. No, I know. But that's the hypothetical. So in that case, is there spoliation? I don't know. This Court has said that the left hand not telling the right hand what to do is not the same thing as the left hand telling the right hand to destroy evidence. And what we have in this case is no one told anyone to wipe these phones for the purposes of destroying evidence. It was simply an oversight. Suppose it was every single person that Skanska had indicated that discovery would be allowed from these persons. At that point, and say everybody had been separated from the company, they'd all turned their phones in, all the phones had been wiped. At what point does this, in your mind, pass negligence to this was an affirmative act with intent to get rid of evidence? I'm not sure that I understand your scenario. You've nominated, what, 13 people. And I think, I forget how many exactly the phones were wiped. Suppose it was everybody. Suppose everybody in the interim had left the company and all of the phones were wiped of these individuals that you had named as people possessing relevant discovery. Have we passed negligence there? I don't have to answer that question, Your Honor. I mean, at some point, presumably, we would. You would concede that, right? I suppose at some point. Just not at this point in your case. Your Honor, I'd like to switch back to the first issue. We've got 21 seconds. Paul, the Fifth Circuit decision, Port Arthur Towing v. John W. Towing, on this point is clear. When the aggregate of the damages being sought by all claimants exceeds the value of the concursus, actions in state court cannot proceed unless all claimants enter into a stipulation that adequately protects the shipowner which has filed a complaint in federal court seeking to limit its liability. I mean, that's law. There's never been, and there's never been a case where a court has done what the district court did in this case. Thank you. You have reserved five minutes. So, Mr. Barr and Ms. Gunter, I understand that you all are proceeding for the Appalese. You're dividing your time. And, Mr. Kelly, you will then proceed for the U.S. government. So, Mr. Barr, you have 20 minutes. You may proceed. May I please report, Brian Barr, on behalf of the Appalese, and just to give you a little road map, I'm planning on handling all of the issues in Appeal Number 22-10203, which is everything I just got done arguing about. Ms. Gunter is handling the spoliation issues, and Mr. Kelly wants to talk about the discovery limits issues. So, Your Honor, the district court should be affirmed on all issues presently before the court. Skanska failed to meet its burden of proof as set out under Hercules and Bunch. They're not entitled to exoneration. The court appropriately limited irrelevant discovery and testimony. And finally, the court was not required to rule on the issue of duty to determine if Skanska committed acts of negligence. And for those reasons, the court should be affirmed no. I want to just address real quickly the findings of Fact Appeals. The court was not clearly erroneous in its determination that Skanska failed to act with reasonable care. According to the district court, Skanska committed acts of negligence that caused the release of 28 barges during the course of Hurricane Sally. And the court found, and they have not appealed, that Skanska was in privity and knowledge of those acts of negligence. And what that means, Your Honors, there will never be a limitation. It can't happen. Even if you were to determine, and I would argue that this would be incorrect, but even if you were to determine that this duty issue had to be decided with the economic false claimants, there could still be no limitation. The acts of negligence that are being complained about, they're all in privity and knowledge of. And with that, the right to ask for exoneration vanishes. Could you help me understand the process? Is the entire limitation proceeding called the concursus, or is that the proceeding after a limitation is set that divides the assets among the claimants who are found to have damage? The measuring of all of the claims is during the munition period, is when all the claims come together. To be blunt, I don't know if that's called the concursus or not at the end of the day. But I do know that the purpose of the Limitation of Liability Act is to determine, will there be a limited fund that the court has to then pro rata allocate out amongst the claimants? And if there's never going to be a limited fund, which there's not going to be here, then there's no reason to hold claimants up in federal court. Would it have been improper if the district court had addressed the economic loss claims during this Limitation Act proceeding? Would it be error, I guess, would be the way I would phrase that question. I would say probably not. I think the court has the discretion to decide that. I've certainly read cases where the courts decide that. In Hercules, I think they decided that before the limitation proceeding. But I think what this court was trying to do, recognizing the complexity of the situation it was dealing with, 28 separate petitions for limitation of liability, 1,000 claimants of different varieties. You had local governments, you had business owners, you had oyster farmers, you had dock owners, all these different types of claims that have come together. And what this court tried to do was balance Gansky's right to petition for limitation of liability and claimants' rights under the Savings-to-Suitors Clause. Do you know why, I think it's fair to say that typically the liability phase comes first. Do you know why that is? It seems that in a lot of cases it might be simpler to resolve privity and knowledge first. And so if there's not a requirement to do the liability first, why do you think that happens? Well, I would say I don't know that there's a requirement to do liability. At least under the standard as set out in Hercules Carriers, it's acts of negligence, which is obviously not complete liability. Complete liability, I mean, yes, there is a common law of negligence. They're not wrong. The common law of negligence is duty, breach of duty, causation damages. But if you take their argument to its extreme, no court in the 11th Circuit would ever be able to find acts of negligence in a bifurcated proceeding because the way they read acts of negligence is acts of the complete tort of negligence. You couldn't bifurcate in that scenario. They're not complaining about the bifurcation of causation and damages. And what this court was trying to do was determine whether Skanska had any liability. And that's actually what the 84H case says. It says there is a determination of any liability. Clearly there is liability here. They aren't arguing about the property damage claimants. They aren't saying additional findings needed to happen there. Do you concede Skanska's position that they have no liability to the plaintiffs who have suffered only economic losses? I do not. Are you challenging that position as a matter of law or as applied to the facts of this case or both? I'm not challenging what Robbins-Drydock says. But over the course of that case, it's been interpreted a lot of different ways. And there are a lot of exceptions to Robbins-Drydock. You have commercial fishermen. You have intentional conduct. We've clearly pled in our complaints intentional conduct. And we believe that those are questions that need to be decided. That's not been decided. But does Robbins-Drydock stand for the position that you have to have a proprietary interest in property under a general rule? Yes, that's what it says. We're not challenging that. But I would disagree with this concept that counsel is arguing that Robbins is black letter of law and issue of duty. It is not. There are multiple cases that talk about how Robbins is interpreted. One that they cited is the Barber case. And what Barber lines versus a motor vessel, Donu-Maru, which is a First Circuit case. And this is Judge Breyer on page 53. And he's talking about how other courts have described Robbins as a proximate cause question. The test bank case talks about it in terms of remoteness of damage, a proximate cause question. So it's not just duty. Now, most courts don't sit around and try and figure it out because at the end of the day, it doesn't make a difference. In a standard maritime negligence case where somebody hit by a vessel files a lawsuit against that ship owner, they have to show all of the elements. This is not a standard maritime negligence case. This is a Limitation of Liability Act case. What if the district court had kept the economic loss cases and ruled on them? What would that have looked like? All entirely separate proceedings? Not separate proceedings, one proceeding, but then having to examine each economic loss plaintiff separately rather than as a whole. The way it was structured was to be bifurcated where we first determined what acts of negligence and then whether they were in privity and knowledge. And if they were entitled to limitation, then at that point, every claimant would be required to come in and show that their claims are valid. And that's actually the language that Judge Collier used in his order to test the validity of the claims. And he cited the Lewis v. Lewis v. Clark Supreme Court case, which talks about that that is the purpose is to look at the validity of the cases. So clearly, there is additional work for claimants to be done. You don't get a piece of the limited fund just because you asserted a claim. You have to come in and say, okay, this happened, and now those acts of negligence caused my damage. I have damage. And at that point in time, the court can decide the duty question. There's no reason why it had to be decided when you're just trying to determine whether or not this vessel owner committed acts of negligence. Because, Your Honor, when you look at the purpose of the Limitation of Liability Act, it's set out very clearly. There's no entitlement to exoneration. If Skanska is right and they are entitled to have exoneration decided regardless of whether or not there's ever a limitation of liability, whether there can be a limitation of liability, then the saving to suitor's clause has no meaning. You might as well just erase it from the statute books. It would have no meaning. And so the court was trying to give that statute meaning. And when you look at, I mean, multiple cases talk about how a Limitation of Liability Act proceeding is a limited proceeding put in place by Congress for a specific purpose. Lake Tankers talks about that. Offshore Palm Beaches, an 11th Circuit case, talks about that. Biswinger talks about that. The sole limited purpose is to bring claims into one concursus for the purpose of allocating a limited fund. That's the only reason this process exists. It is not to force claimants into federal court where you can decide all of their claims on the merits, particularly when the ship owner is not entitled to limitation. I mean if you take Lake Tankers, Supreme Court case, Lake Tankers says that you cannot take the Limitation of Liability Act and turn it into an offensive weapon forcing into federal court what would – forcing claimants into federal court. And it described it as an improper expansion of federal jurisdiction. You know, at the end of the day, I think we all have to recognize that the federal courts are courts of limited jurisdiction. And unless Congress has specifically provided the federal court's jurisdiction, it does not have it. And the way maritime law has been set up, it was set up as concurrent jurisdiction. So people can come in under 28 U.S.C. 1333. They can either file their case in state court or they can file their case in federal court. That is their choice. They have the right to choose where they litigate their case. Skanska can't force that right on them. And then I go back to the FECT case where the FECT case talks about, and this is Fifth Circuit 1969, so it's binding precedent in this court. And what the FECT case talks about was if limitation is not possible, if you are within privity and knowledge, the exoneration question vanishes. It vanishes. That is the exact opposite of you are entitled to exoneration. So the district court, help me understand, the district court says at the beginning of its order, under the Louisiana rule, a presumption of negligence is established over the fact that numerous barges belonging to Skanska broke loose when Hurricane Sally struck the Pensacola area, causing widespread damage. Because Skanska fails to overcome that presumption and because Skanska cannot show that it was without knowledge or privity as to its negligence, it is the finding of the court that Skanska is not entitled to any relief under the Limitation Act. And then in Byswinger, which is quoting Hercules, it says, let's see, first, the court must determine what acts of negligence or conditions of unseaworthiness caused the accident. Second, the court must determine whether the shipowner had knowledge or privity of those same acts of negligence or conditions of unseaworthiness. Is it overreading the court's conclusion here to say that it at least satisfied those two things broadly? No, I don't think it's overreading the court's opinion at all, if I'm understanding your question, which is Hercules Carrier sets out the standard for proving an entitlement to limitation. Number one, what acts of negligence? And if you look at that question, it's not shipowner's acts of negligence. It's broadly what acts of negligence? And then the second question is, is the shipowner in privity and knowledge of those acts? And so when you're looking at the acts of negligence and just saying, well, they have to sign liability, I mean, that's a really broad reading of a limited act to say that the court is required to determine liability. And again, like when you look at, in this case, because these were 28 separate elisions, with actually more than 28, but 28 barges that ran into stationary objects, under a barge, they start this case at fault. The claimants weren't required to prove anything in a limitation case. It was completely their burden to come in and show they acted with reasonable care. How they rebut the presumption doesn't make any sense if we have to show the complete – if acts of negligence isn't the complete tort of negligence. That wouldn't make any sense on how they even rebut the presumption. And then, you know, counsel talked about, and frankly, I've been confused on this argument, and maybe it's my fault, but when Skanska talks about they were entitled to a permanent injunction, and they cite all of these cases that talk about the exceptions to the Limitation of Liability Act and when a claimant can proceed outside of the limitation to prove their claim in state court. Every single one of those cases are talking about situations before the Limitation Act was tried. We are past that point. They aren't entitled to an injunction against all these claimants. And again, this isn't a situation – not a single one of these claimants as a result of this trial has a judgment that they can go to court. Not a single one. They all still have to go improve their cases. It's just now we get to do it in the form of our choice as allowed under the Savings to Suitors Clause because their rights have been completely protected. They were given the full right to go. We had a five-day bench trial. Thirteen witnesses. Lots of documents. Put in lots of depositions. And they had the right to come in and say, We acted reasonably. And the court said, No, you didn't. You did. You ignored warnings. You didn't go to your safe harbor. And it was – you didn't follow your hurricane plan. You were in the time you made decisions to move. You were under a tropical storm warning. Knowing this thing was going to turn into a hurricane, you don't get to say you were surprised. The court rejected all of that based upon the evidence. So given all of those findings, Your Honor, it's illogical that they would be entitled to exoneration. And, Your Honor, just remembering that under the – I know I got sidetracked, but we started this. I was going to talk about the findings of fact on the reasonable care. That is a clearly erroneous standard. And understanding that Skanska had the burden. It's frankly not possible to find that the district court was clearly erroneous when you set out everything that happened. They moored 40 barges in the middle of the bay, ignored their safe harbor, didn't go there, left 40 unmanned barges tied up in the middle of the bay at sites where their own experts testified those were not safe locations for a hurricane. Their own experts agreed that Butcher Pin Cove would have been a safer spot than the middle of the bay. As the situation played out, they took one of those barges that broke free before tropical storm force winds even hit the area, and they took it to Butcher Pin Cove and tied it off, and it stayed there throughout the storm. And, Your Honor, and that's an important point because they're not even appealing that this is an inevitable accident. If you remember, under BUNS, there's three ways to rebut the presumption that it was the fault of the stationary object. They didn't even try that one. They acted reasonably. Well, they tried that and failed. Or that it was an inevitable accident. They don't talk about that in their appeal. So clearly, at this point, they're agreeing that if they had moved their stuff to Butcher Pin Cove, it would have made a difference. So when you take all of that in context, there's no way for them to argue that they acted reasonably. Your Honor, again, I just want to, I can't stress enough the limits on the Limitation of Liability Act and how that balances with the savings to suitor's costs. And when you look at what this court was trying to balance,  and I think the court did an admiral job trying to balance these broad issues and operating in the most efficient way, which it has the discretion to do on how it manages its docket. And it did everything it could to protect Skanska's rights under the Limitation of Liability Act and to protect the claimant's rights under savings to suitors. And for those reasons, the court should be affirmed. Thank you. Ms. Gunter, you have five minutes. May it please the Court. Deborah Nicole Guntner on behalf of Appalese to address Spoliation and Sanctions, case number 21-13850E. The magistrate judge affirmed by the district court found that this is a textbook case of spoliation. Skanska destroyed evidence from five of the 13 custodians that it conceded were, quote, key custodians, quote, expected to have generated or maintain the most crucial discoverable ESI in this case. Was there anything that set these five apart from those custodians whose data was not destroyed? To some extent, yes. To some extent, no. So these five custodians, four of them were superintendents. So that's important because these are the people that had the boots on the ground actually implementing the plan that was decided not to follow the hurricane preparedness plan but instead to move these barges to other locations and secure them. How many superintendents were there? Total? I don't know offhand right now, Your Honor, but there were four with spoliated cell phone data. Other custodians, so we have the five, and those four were superintendents. The fifth was Sarah Stevens, who was a field engineer. She was the author of the hurricane preparedness plan that was in place, and she was also in charge of barge recovery following the storm, which required her to take photos and videos on her phone that were not preserved with the exception of some. She says she might have emailed. Do we have any superintendents' information? I can't recall. I don't believe so, Your Honor. So we have cell phone data from the three individuals, Fulton, DeMarco, and Rogers, who actually made the decisions, the more managerial-type roles who made the decisions not to follow the hurricane preparedness plan, and what we're severely lacking was that crucial evidence, the candid, compelling evidence of what was actually happening on the ground. We do know that these individuals were texting each other back and forth about what they were doing on a minute-by-minute basis, and they were taking photos. Were any of them communicating with people whose information you do have? So we have some of their text messages, right, that were received by people whose data was retained. Yes, Your Honor. To some extent, there was text messages from these individuals that were found on cell phones of other individuals whose data was not destroyed. However, claimants produced evidence in our briefing. We cited two examples where these five individuals were, number one, texting each other. So if you have one cell phone that was completely destroyed, another that's completely destroyed texting each other. Those are lost. They're irretrievable, substantially and completely destroyed. There are also incidents where these individuals were texting third parties, and those we do not have. Third-party evidence did come to play at trial. For example, it was exhibit number C245. Mr. Fulton, one of the managers, he texted a third party that Skanska prepared for 25 miles per hour, and they got 85 miles per hour. And that's the type of very candid admissions we're seeing in the text messages that we did get. And that really goes to how crucial this evidence is for claimant's case. But there's no evidence that Skanska was wiping these cell phones to hide evidence. I think the district court said this was a case of oops, my bad, and that wasn't enough to justify in the district court's opinion. But you're not suggesting that there was any evidence of deliberate destruction of evidence, right? Your Honor, deliberate, I think Skanska seems to argue that some type of traditional malice or malfeasance is required, and that is not what's required under the law. And that is not what we allege either. What's required, what is the standard, is affirmative acts that cannot be explained from anything other than bad faith in the face of a known duty to preserve evidence, and that's what we had here. Skanska's acts virtually guaranteed spoliation by choosing not to promptly collect the evidence. But the damage had already taken place when the phones were wiped. They already knew there was a problem. Yes, Your Honor. So Skanska admitted to a duty to preserve evidence as early as September 16th. These phones were all destroyed after the admission of the duty to preserve evidence, after discovery had been served, after litigation had been filed. The timing is honestly cannot be described by anything other than bad faith because they admit to this duty in September of 2020. These phones were not even collected and processed until June of the following year. How do you find bad faith without some level of intentionality? So bad faith under managed care can be established through circumstantial evidence. The evidence once existed that no longer exists. We know that here. Right, but I mean circumstantial versus direct evidence I think is about a type of evidence, but I'm talking about a state of mind. Why can you show bad faith without showing an intention to either destroy or let evidence be destroyed? This court actually in Mann v. Taser distinguished the difference between malice and intentional acts as required for bad faith. One is not required for the other. By a showing of affirmative acts that cannot be explained by anything other than bad faith, you can show bad faith in that way, and that's what the court did here. Couldn't these wipes be explained by, I mean, recklessness or even, A, is recklessness enough, and B, what about, they just have a, let's say hypothetically, they just have a really bad IT department and people are always leaving and nobody really understands litigation holds and they just didn't do it, right? I mean, is that bad faith? That's precisely why discovery obligations on the company exist to prevent perhaps isolated incidents of someone not understanding a legal hold. Just issuing a legal hold is not enough. The company has to take steps to preserve the evidence, to have basic conversations with the people they identify as their key employees about what that preservation obligation is, to manage compliance with the hold, and in this case, Skanska made affirmative acts. They made conscious decisions not to do those things and not to suspend their routine document destruction policies, and doing so virtually guaranteed spoliation of evidence, and that cannot be explained by anything other than bad faith. Thank you. Thank you, Your Honor. All right, Mr. Kelly, you have five minutes. Yes, Your Honor. Your Honor, thank you for your support. My name is Robert Kelly. I am here on behalf of the United States. My sole purpose up here is to talk about the limitation of a discovery issue that hasn't seemed to really be much of an issue during my friend Mr. Watson's opening statements. Well, in fact, you would note that that was not mentioned, so now you're opening the door if you're fine with that. I am totally fine with that because I want to highlight one point and one point only, and that is during the entire briefing by Skanska, nothing was brought up about the dual purposes or the dual justifications by which discovery was limited in this case. Skanska's entire basis of their appeal is on relevancy. They completely ignored the lower court's decision regarding proportionality, and we would argue that because of their omission, both here and in their briefing, that that is considered waived, and that regardless of what the court believes with regard to the relevancy, that the denial of discovery or the limitation of discovery would stand regardless. That might be important to you because the standard for relevancy is pretty low, isn't it? The standard for relevancy is rather... Well, first, the standard for the judge's decisions with regard to how he or she controls their courtroom and processes discovery is abuse of discretion, so that's a rather generous standard towards the judge here. The standard for relevancy in a lot of cases is rather broad. The Supreme Court and the courts of appeals have narrowed that over time as electronic discovery has become a broader and broader topic, and companies, individuals, governments, everybody has been creating more and more data, which is why the issue of proportionality is so critical. As Judge Schlesinger pointed out, there are a lot of parties in this case. The Navy is just but one of them. We have 60-plus pages of Certificate of Interest at parties. Skanska's initial discovery request, which was the subject of Discovery Order No. 2, which set this whole thing in motion, was directed at everybody within the claimant's camp. So not just the Navy. Can you explain on that note which discovery the Navy complied with and then which discovery it objected to? Sure. With regard to depositions specifically, the Navy ended up objecting to all of them, and that was because by that point in time we were going through show cause orders and motions for protective orders. The very initial stuff was interrogatories and requests for production of documents, and a lot of those requests for production of documents were about what Navy weather information the Navy specifically was relying upon. Those are the categories of documents that the Navy objected to. We did end up turning over quite a large swath of documents that while not specifically related to the issue of liability in this case, was related to, in very general terms, the presence of barges. Because one of Skanska's discovery requests was basically for all photographs and videos of barges after they left the Pensacola Bay Bridge. We happened to have numerous witnesses who were on Navy property who saw Skanska's barges banging into Navy property, and therefore we produced those photographs, we produced those videos, we produced the witness statements that talked about Skanska barges destroying Navy property. What about the Navy's preparations for the hurricane? We did not believe that was relevant, and neither did the lower court believe that was relevant. Well, I understand, but I'm asking now, why is that not relevant when you have a military, certainly institution, that exists in large part on the water, and they are waterfront located, and we have a hurricane coming. Why is it not relevant? If the Navy saw the weather reports and said, this is no big deal, we're not going to do anything, how is that not relevant to Skanska? It's not relevant to Skanska because the Navy was preparing shore-side facilities, human beings, buildings, airplanes, things of that nature. The Navy didn't have any waterborne assets. There's something very unique and specific when you come down to dealing with unmanned, unpowered barges. These are not barges that are small in size. They are larger than this courtroom. They weigh thousands of tons, and when they are unleashed, unsuspectingly, unwillingly, and uncontrolled, the chaos that they cause is exactly why we have over 1,000-plus parties in this case. A Navy decision about how it's going to prepare classrooms and personnel and their families and whether they're going to bus them to internal facilities is not relevant at all. But the Navy did have manned ships at the facility, right? No, it did not. Okay. What about the Coast Guard? The Coast Guard had three Coast Guard cutters that home ported at Pensacola. The Coast Guard's captain of the port was deposed in this case, and she testified at trial. Skanska never asked a single question of her about anything related to Coast Guard interpretations of weather information, the same thing that Skanska never did with anybody from the National Weather Service, the National Oceanic Atmospheric Administration, the National Hurricane Center. Skanska never bothered to ask those people who would probably have the most information about how to interpret this weather information. Skanska just chose to cherry-pick the Navy who had nothing relevant to add. Your Honor, I see that I've run out of time. Thank you very much. All right, Mr. Watson, you have five minutes. Thank you, Your Honor. Mr. Barr may mention the fact that the district court said that the court was going to decide what negligent acts had occurred. With respect to the economic loss claimants, Skanska did not commit any negligent acts. The words of the Supreme Court in Robbins' dry dock, the injury to the propeller was no wrong to the respondents, but only to those to whom it belonged. You can't be negligent without a duty.  It's not negligent to someone who is not owed a duty. Judge Graham, you asked a question about whether there was a concursus from the very beginning, and I think the Port Arthur Towing Company makes it very clear that the concursus existed from the moment the case was filed. It says, when the aggregate of the damages being sought with a claimant exceeds the value of the concursus. All actions in state court cannot proceed unless all claimants enter into a stipulation that adequately protects the shipowner. I will say that this case is the only case ever under the history of the Limitation Act where a district court has, in the absence of a sufficient fund or a stipulation, is the only case where a district court has not followed the guidelines set forth by the Supreme Court and the Courts of Appeal to decide the issue of liability prior to deciding the issue of limitation. I still don't understand why a stipulation would have mattered in this case because, as we've already noted, the cases that you cite to where there was a stipulation, the Limitation Act proceeding had not yet happened. Here it has. Why do we need a stipulation? Well, there needed to be a stipulation for the court not to rule on the issue of liability. The court had to rule on the issue of liability unless there was a stipulation or a sufficient fund, and in the absence of those two things, the court had no discretion to not rule on whether Skanska was liable to the economic loss claims. There was also discussion of the injunction and the importance of the injunction. And this calls into play why these cases should not go to state court. As a party entitled to exoneration, Skanska is entitled to a permanent injunction against anyone ever filing a lawsuit for damage to the Pensacola Bay Bridge. The federal court can issue an injunction, could and should issue an injunction that prohibits anyone ever filing a case for damage to the Pensacola Bay Bridge. State court cannot do that. In the state court, it will go case by case by case. In one of the early cases in the Supreme Court, I would have to check my notes to get the style of the case, but I can do that. The court talked about the need to avoid the harassment of the shipowner by having to defend multiple cases. But we've also, Judge Grant and myself, we have both quoted from the same language from Beiswanger that the Limitation Act marshals assets, but it's not meant to prevent a multitude of claims. It seems like you're arguing in the face of that language that, in fact, it should be preventing a multitude of claims. That's what the Supreme Court said. I'm quoting language from the United States Supreme Court. And again, in every limitation case that has ever been filed, the Federal District Limitation Court has maintained jurisdiction over the issue of liability in the absence of a sufficient fund or stipulation. The time for a stipulation would have been at the outset of the lawsuit. There's a recent case that we cite in our brief, the Archer Daniels Midland case, where the claimants tried to enter a stipulation after the case had been tried. And the court said, no, you can't do that. The time for stipulation was at the beginning of the case, and that didn't happen in this case. I say I have 18 seconds left. Just I will address very briefly the issue of the relevance of the Navy. The issue was not whether the Navy's actions in protecting their airplanes or whatnot was similar to the actions of Skanska in securing the fleet. The relevance was that they were a sophisticated entity that was looking at the weather forecasts just like Skanska was. Thank you. Thank you. Thank you all. We have your case under advisement, and court is in recess until tomorrow morning. All rise.